UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUWAN DEERING,

                        Petitioner,                      Case Number: 2:11-cv-10320

v.                                                 HONORABLE GERALD E. ROSEN

MITCH PERRY,

                        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner, Juwan Deering, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Macomb Correctional Facility in Kincheloe, Michigan, challenges his convictions for five counts of first-degree felony murder and one count of burning a dwelling house. Respondent has filed an answer arguing that the claims are meritless, procedurally defaulted, and/or non-cognizable. The Court denies the petition.

I.      **Background**

Petitioner's convictions arise from the deaths of five children in a house fire in Royal Oak, Michigan, on August 6, 2000. The prosecution presented evidence that Petitioner set the fire to intimidate the home's owner and father of three of the deceased children, Oliver Michael Dean, who owed Petitioner money for drugs purchased from Petitioner on credit.

Marie Dean lived in the home with her nine children.  Oliver Michael Dean ("Big Mike") no longer lived in the home because of his long-standing drug problem.  Paul Frame and his daughter Michelle lived in the house on the second floor.  Marie testified that she woke up at approximately 11:30 p.m. because she could not breathe.  She realized the house was on fire and attempted to rescue her children from the fire.  She moved her children to the back bedroom and told them to jump out the windows.  Her next recollection was being outside on the back porch.

Steve Meech, a deputy with the Oakland County Sheriff's Department, testified that he responded to the report of a house fire at approximately 11:50 p.m.  He and a neighbor entered the burning home and dragged Marie Dean from the home.  He also helped to rescue two children from the home.

James Lehtola testified that he was employed as a fire investigator for the Oakland County Sheriff's Department.  He was qualified as an expert witness.  He arrived at the scene of the fire at approximately 1:20 a.m., and, along with two other members of the fire investigation team, investigated the cause of the fire.  He concluded that the fire started at the front of the home.  He also concluded that a liquid accelerant had been used. The Michigan State Police Crime Laboratory found the presence of a mid-grade petroleum product in the porch debris.  Lehtola recovered a bottle of charcoal fluid from the porch.  Lehtola concluded the fire was intentionally set.

Dr. Ljubisa Dragovic, the chief medical examiner for Oakland County, testified that all five of the victims, Eugene Dean, age 6, Aaron Dean, 7, Craig Dean, 8, Taleigha

2

Dean, 10, and Michelle Frame, 11, died from smoke and soot inhalation and thermal burns.

Three jailhouse informants implicated Petitioner in the crime. First, Phillip Turner testified that he was incarcerated with Petitioner for approximately a week in July 2000. Turner testified that Deering stated he was a suspect in a fire that killed five children. Deering reportedly told Turner that he used lighter fluid that had been left on the front porch to start the fire, and that he started the fire because "Big Mike" owed him money for drugs. Second, Ralph McMorris testified that, while he was incarcerated with Petitioner in 2003, Petitioner told him that Big Mike owed him $50 and that Big Mike's wife refused Petitioner's request to pay the debt. Petitioner admitted to spraying the front of the house with charcoal lighter fluid he found on the front porch. Finally, Raymond Jeffries testified that, while incarcerated with Petitioner in 2000, Petitioner admitted to being a suspect in a fire that killed five children and that if he could do it all over again, five children would be alive.

## II.   Procedural History

Petitioner was convicted by a jury in Oakland County Circuit Court of five counts of first-degree felony murder and one count of burning a dwelling house. On August 23, 2006, he was sentenced as a fourth habitual offender to life in prison for each of the murder convictions and 25 to 50 years in prison for the arson conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims through counsel:

3

I.      Mr. Deering is entitled to a new trial because he was deprived of the
        effective assistance of counsel where counsel did not consult with or call an
        expert witness to dispute the conclusion that this fire was an arson that
        began on the porch, and conducted only a cursory cross-examination of the
        prosecution's expert.

II.     These convictions must be reversed because the evidence was legally
        insufficient to prove beyond a reasonable doubt that Mr. Deering
        intentionally set the fire that resulted in the felony murder and arson
        charges; it was also contrary to the great weight of the evidence.

III.    Mr. Deering is entitled to a new trial where newly discovered evidence
        reveals that one of the informants committed perjury when he denied ever
        having received a benefit for his testimony.

IV.     Alternatively, Mr. Deering is entitled to a new trial based on newly
        discovered evidence the prosecution violated his due process rights by
        failing to disclose impeachment materials that would have revealed (1) a
        government witness lied under oath regarding his previous participation and
        benefits he had received as an informant and (2) the government's witness
        had an expectation of leniency as a result of testifying in Mr. Deering's
        case.

V.      Mr. Deering's due process right to a fair trial was violated by the admission
        of impermissible opinion testimony about his credibility and ultimately his
        guilt or innocence.

Petitioner raised these additional claims in a pro se supplemental brief:

I.      Petitioner was denied due process of law where he was bound over for trial,
        found guilty, where the district or circuit had no subject matter jurisdiction
        over any of the proceedings.

II.     Did the magistrate David Gubow fail to ascertain the facts prior to issuance
        of warrant denying Deering equal protection under U.S.C.A. Const. Am 4th
        and 14th.

III.    Petitioner was denied a fair trial where the government deliberately placed a
        knowing unreliable inmate informant in his jail cell to investigate and
        gather information after right to counsel attached violating right to counsel
        by government's use of unreliable informant testifying to matters of

4

common knowledge contained in local tabloid.

IV.     Did prosecution falsely present forensic analysis lab report as positive arson proof.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Deering*, No. 274208, 2008 WL 5197091 (Mich. Ct. App. Dec. 11, 2008).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Deering*, 485 Mich. 971 (Mich. Nov. 20, 2009).

Petitioner then filed the pending habeas petition. He raises these claims:

I.      Was the Michigan Court of Appeals decision that Petitioner was not denied the Sixth Amendment right to effective assistance of trial counsel reasonable where counsel did not challenge the basis underlying Detective Lehtolin's opinion nor did he procure an arson expert to challenge the validity of Detective Lehtola's methods and reliability?

II.     Did the Michigan Court of Appeals decision to deny Petitioner's insufficiency of the evidence claim where the prosecution failed to prove beyond a reasonable doubt any elements that Petitioner set fire to the home and where the verdict was against the great weight of the evidence?

III.    Was the Michigan Court of Appeals unreasonable to deny Petitioner a new trial where newly discovered evidence revealed that the prosecution star witness committed perjury when he denied ever having received a benefit for his previous testimony?

IV.     Did the Michigan Court of Appeals decision to deny Petitioner a new trial based on prosecution's violation of his due process rights by failing to disclose impeachment material?

V.      Was it an unreasonable application of Supreme Court precedent for the Michigan Court of Appeals to deny Petitioner a new trial where the lower

5

court admitted impermissible opinion testimony about his credibility and his guilt or innocence by Detective Miller and Christopher Lanfear?

VI. Was the Michigan Court of Appeals' decision an unreasonable decision where Petitioner was denied due process of law where he was bound over for trial where the district and circuit court lacked jurisdiction over the proceedings?

VII. Did the Michigan Court of Appeals unreasonable decision deny Petitioner equal protection under the Fourth and Fourteenth Amendment where the Magistrate failed to ascertain any facts before the issuance of the warrant for Petitioner's arrest or affidavits?

VIII. Did the Michigan Court of Appeals' decision deny Petitioner's Sixth Amendment rights where jailhouse informants were purposely placed in cells by detectives to corroborate particulars of common knowledge in local and county sheriff's media statements?

IX. Did the Michigan Court of Appeals' decision or application of law deny Petitioner's due process where prosecution repeatedly committed misconduct when it misrepresented non-facts into evidence where these non-facts lighter fluid was the gist of this criminal charge?

## III.  Standard

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

6

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412.   Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).   "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.    Discussion**

      **A.    Ineffective Assistance of Counsel Claim**

8

Petitioner claims that his trial attorney was ineffective in failing to interview or procure an arson investigation expert and in failing to challenge the scientific bases underlying the prosecution's expert witness.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at

9

123 (internal quotation omitted).

The Michigan Court of Appeals denied Petitioner's ineffective assistance of

counsel claim, stating:

> Before defense counsel began his cross-examination of the prosecution's arson investigation expert, James R. Lehtola, counsel asked Lehtola for his opinion regarding the difficulty of assessing the cause and origin of a fire on the basis of photographic evidence six years after the fire took place. The fire occurred on April 6, 2000, and defendant's trial began on July 18, 2006.  Lehtola responded that he would be unable to formulate an opinion based only upon this limited information, and that it would be "very difficult" for an arson investigator to determine the cause and origin of a fire solely on the basis of photographs and films taken six years earlier. Defense counsel then continued with his cross-examination of Lehtola.
>
> During cross-examination, Lehtola testified that the back door of the house that burned had been nailed shut.  This testimony supported defendant's theory, subsequently developed through neighbor Marvin Craig's testimony, that Marie Dean, the homeowner and mother of four of the five victims, may have been responsible for setting the fire.  Lehtola also admitted on cross-examination that he did not attempt to test the charred debris recovered from the porch for the presence of gasoline, which could have been used in a lawnmower and "weed whacker" that were stored on the porch, where the fire apparently originated.  Lehtola also testified that gasoline is a more volatile substance than a midrange petroleum product, and can therefore be easier to ignite.  This testimony could have supported the theory that the fire was not intentionally set, but was instead the result of accidental ignition of gasoline that had leaked or had been spilled onto the porch.  Moreover, on cross-examination, Lehtola testified that no fingerprints were recovered from the bottle of charcoal lighter fluid, and he had not recovered an ignition source, such as a cigarette lighter or matches. This testimony could have supported the defenses that the fire was not intentionally set, or that if the fire were the result of arson, no physical evidence connected defendant to the crime.
>
> We conclude that defense counsel performed in an objectively reasonable manner under the circumstances. . . . Although counsel did not directly challenge the scientific bases underlying Lehtola's opinions, the record demonstrates that counsel was aware that a defense expert, at the time of

defendant's trial, would have had difficulty formulating the scientific basis
for an opinion regarding the cause and origin of the fire based only upon the
available evidence.  On cross-examination, defense counsel exercised sound
trial strategy when he adapted his tactics to the circumstances presented and
attempted to elicit admissions from Lehtola that supported the defense
theories that the fire was accidentally caused, or in the alternative, that
defendant was not the person who set the fire.

Furthermore, defendant fails to show a reasonable probability of a different
outcome but for counsel's alleged errors. . . . We decline defendant's
invitation to assess counsel's performance using the benefit of hindsight;
therefore, we conclude that defendant did not receive the ineffective
assistance of counsel when his attorney failed to confront Lehtola with the
National Fire Protection Association guidelines. . . . Moreover, even if
defense counsel had challenged the scientific bases of Lehtola's opinion
that the fire was the result of arson on the grounds of alleged
inconsistencies with guidelines set forth by the National Fire Protection
Association, Lehtola might have explained precisely what the guidelines
covered and why the guidelines did not apply, which would have further
damaged defendant's position that the fire was not started intentionally.
Because defendant cannot show that counsel's performance was objectively
unreasonable under the circumstances, and cannot demonstrate
outcome-determinative prejudice, his ineffective assistance of counsel claim
fails.

*Deering*, 2008 WL 5197091 at *2.

The rejection of this claim by the Michigan Court of Appeals is neither contrary to,

nor an unreasonable application of, Supreme Court precedent or federal law.  Petitioner is

unable to overcome the strong presumption that counsel rendered adequate assistance and

"made all significant decisions in the exercise of reasonable professional judgment."

*Strickland*, 466 U.S. at 690.  Although some attorneys may have called an expert witness to

testify, that is not the test for habeas review.  The Supreme Court has stated that there are

"countless ways to provide effective assistance in any given case.  Even the best criminal

defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. "It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it." *Harrington*, 131 S. Ct. 770 at 789 (2011). Petitioner has failed to demonstrate that his counsel's representation fell below the reasonableness standard set forth in *Strickland*.

In addition, Petitioner has not demonstrated that he suffered prejudice from his counsel's performance. He has not offered any evidence challenging Lehtola's conclusions. His arguments are based upon speculation as to what a defense expert's testimony would have been and what impact that may have had on his defense. Such arguments are simply too speculative to prove prejudice under *Strickland* and the AEDPA's deferential standard. *See Hanna v. Ishee*, 694 F.3d 596, 619 (6th Cir. 2012). "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 131 S. Ct. at 791. Often, "cross-examination will be sufficient to expose defects in an expert's presentation." *Id.* Here, counsel's cross-examination of Lehtola indicates capable advocacy.

### B.  Sufficiency of the Evidence Claim

In his second claim, Petitioner argues that the prosecutor presented insufficient evidence to sustain his first-degree murder conviction. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of

every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397

U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge

must focus on whether "after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in

original).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit

reference to the substantive elements of the criminal offense as defined by state law.'"

*Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324

n.16).

"Two layers of deference apply to habeas claims challenging evidentiary

sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v.

Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether,

viewing the trial testimony and exhibits in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt."  *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319).  Second, if

the Court were "to conclude that a rational trier of fact could not have found a petitioner

guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the

state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of first-degree felony murder are: (1) the killing

of a human being; (2) with the intent to kill, to do great bodily harm, or to create a very

high risk of death or great bodily harm with knowledge that death or great bodily harm

would be the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies enumerated in Mich. Comp. Laws § 750.316. *People v. Smith*, 478 Mich. 292, 318-319 (2007). Burning of a dwelling house, Mich. Comp. Laws § 750.72, is one of the enumerated crimes set forth in § 750.316. The elements of burning a dwelling house are: (1) the burning of a dwelling house, (2) by, or at the direction of, or with the assistance of the defendant, and, (3) the defendant maliciously or willfully set the fire. *People v. Lindsey*, 83 Mich. App 354, 355 (Mich. Ct. App. 1978). The required mental state for arson is either (1) "an intent to burn the dwelling house of another," or (2) "doing an act in circumstances where a plain and strong likelihood of such a burning exists." *People v. Nowack*, 462 Mich. 392, 408-09 (Mich. 2000).

The Michigan Court of Appeals, although not specifically citing *Jackson*, clearly applied the *Jackson* standard and held that sufficient evidence was presented to sustain Petitioner's convictions:

> Reviewing the record de novo, and viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant intentionally burned the Dean residence, which in turn resulted in the deaths of the five victims. In July 2000, defendant, who was incarcerated in the Oakland County Jail on unrelated charges, admitted to his cellmate, Philip Turner, that he had burned a house because a person named "Big Mike" owed him money for drugs. This evidence is consistent with Marie Dean's testimony that her house had burned and that her husband, Oliver Dean, also known as "Big Mike," had been addicted to crack cocaine. Similarly, defendant admitted to Raymond Jeffries while they were incarcerated in August 2000, that he was a drug dealer and that if he could live his life over again, five children would still be alive.[] Moreover, defendant admitted to informant Ralph

McMorris, while McMorris and defendant were incarcerated in 2003, that he had sprayed the front of a house with charcoal lighter fluid and had set the house on fire, which resulted in the deaths of several children. This evidence also corroborates Lehtola's testimony that the origin of the fire was at the entry to the front porch and the entry from the porch to the house, and that the fire was caused by "the open flame ignition of vapors from an ignitable liquid that was distributed within that area." Lehtola opined that the fire resulted from arson, and that analysis of debris samples and the burn patterns showed that the arsonist used a midrange petroleum product, such as charcoal lighter fluid, to set the fire.

On the basis of this evidence and reasonable inferences drawn from the evidence, we conclude that a rational trier of fact could have concluded beyond a reasonable doubt that a dwelling house was burned, that the house was burned by defendant, and that defendant maliciously or willfully set the fire. MCL 750.72; . . . Likewise, a rational trier of fact could have concluded beyond a reasonable doubt that the fire set by defendant killed five human beings, which resulted from defendant's having "creat[ed] a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." MCL 750.316(1)(b); . . . . The evidence was sufficient to support defendant's convictions of first-degree felony murder and burning a dwelling house.

*Deering*, 2008 WL 5197091 at * 3-4.

According the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented for a finding of guilty did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

To the extent Petitioner also is raising a claim that the verdict was against the great weight of the evidence, this claim is meritless. In Michigan, a trial court may order a new

15

trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642, 576 N.W.2d 129, 137 (1998) (internal quotation omitted). *Id.* at 634, 576 N.W.2d at 133 (citing Mich. Comp. Laws § 770.1 and Mich. Ct. R. 6.431(B)). The grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude." *Id.* at 634 n. 8, 576 N.W.2d at 133. Thus, a claim that a verdict is against the great weight of the evidence alleges an error of state law, which is not cognizable on habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law").

### C.     Phillip Turner's Testimony

In his third and fourth habeas claims, Petitioner argues that, after his trial, he discovered evidence that prosecution witness Phillip Turner perjured himself. Turner testified that he had never received any benefit for acting as an informant in any case. After Petitioner's trial and sentence, the Michigan Court of Appeals issued an opinion in an unrelated criminal appeal, *People v. Fox*, No. 261972 (Mich. Ct. App. Dec. 28, 2006), in which Turner had testified for the prosecution. In exchange for his testimony (which occurred prior to Petitioner's trial), misdemeanor charges against Turner were dismissed and he was transferred to a different prison. Petitioner argues that this shows that Turner's testimony regarding benefits received was false and that the prosecutor knowingly presented this false testimony.

16

First, Petitioner challenges the Michigan Court of Appeals' application of a four-part test to determine that the newly-discovered evidence did not entitle Petitioner to a new trial. It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioner's argument that the state court erred in applying the four-part test is based solely on the state court's interpretation of state law. It does not implicate any federal rights. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law.").

Petitioner's claim that the prosecutor withheld evidence that Turner previously received a benefit from testifying as an informant, however, does raise a claim cognizable on federal habeas review. To demonstrate a *Brady* violation, (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "There is no Brady violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such

17

cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotation marks omitted).

The Michigan Court of Appeals found no *Brady* violation:

"A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about the defendant's guilt." *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005); *see also People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994), and *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). "In order to establish a Brady violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." *Cox, supra* at 448. But the prosecution is not required to disclose evidence "whose utility lay only in helping a defendant contour a portion of his cross-examination of a key state witness." *People v Banks*, 249 Mich App 247, 254; 642 NW2d 351 (2002). Nor are the police and prosecution required to seek out and find exculpatory evidence on defendant's behalf. *People v Sawyer*, 222 Mich App 1, 6; 564 N.W.2d 62 (1997).

Defendant argues that the prosecutor should have disclosed that the informant testified in the *Fox* case and that the informant received a benefit for testifying in that case. As a preliminary matter, as the prosecution points out, and as defendant implicitly admits through his exclusive reliance on foreign authority, no Michigan appellate court has ever imposed a duty upon a prosecutor to investigate and disclose information possessed by a prosecutor in a different locality on the basis of constructive knowledge. Because defendant relies only upon the "constructive knowledge" theory that the prosecutor possessed the information, defendant cannot demonstrate that the prosecutor actually possessed the information that the informant had participated in *Fox*. Thus, defendant is unable to meet the first element of a Brady claim. *Cox, supra* at 448. In turn, because defendant fails to show that the prosecutor actually possessed the information, defendant cannot show that the prosecutor suppressed it because the prosecution is unable to suppress something it does not have. As such, defendant is unable to satisfy the third element of a *Brady* claim.

18

*ld.* Even if the prosecutor had possessed the information regarding the informant, and had suppressed it, the information was as accessible to defendant as it would have been to the prosecution. Accordingly, defendant is unable to establish the second element of a *Brady* claim as well. *Cox, supra* at 448.

Furthermore, as previously discussed, defendant cannot show that there was a reasonable probability that the outcome would have been different had he been provided with the information regarding the informant's involvement in *Fox*. As such, defendant's contention that the prosecutor committed misconduct when it failed to disclose this evidence lacks merit.

*Deering*, 2008 WL 5197091 at *7.

The Michigan Court of Appeals' decision was a reasonable application of Supreme Court precedent. In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme Court held that *Brady's* disclosure requirement "means that the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Id.* at 437. Here, there is no evidence that Turner's involvement in the *Fox* case, which involved a different jurisdiction, was known or should have been known to the prosecutor or any member of the prosecutor's team. *See United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir.1999) (refusing to impute knowledge from state investigators to federal prosecutors). Further, as observed by the Michigan Court of Appeals, the information regarding Turner's criminal history was produced to the defense. The defense, through a reasonable investigation, could have discovered Turner's testimony in the *Fox* case.

Finally, Petitioner fails to show any prejudice. "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a

19

reasonable probability that, had the evidence been disclosed to the defense, the result of

the proceeding would have been different.'"  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)

(*quoting United States v. Bagley*, 473 U.S. 667, 682 (1985)).

> The question is not whether the defendant would more likely than not have
> received a different verdict with the evidence, but whether in its absence he
> received a fair trial, understood as a trial resulting in a verdict worthy of
> confidence.  A "reasonable probability" of a different result is accordingly
> shown when the government's evidentiary suppression "undermines
> confidence in the outcome of the trial."

*Kyles*, 514 U.S. at 434 (*quoting United States v. Bagley*, 473 U.S. 667, 678, (1985)).

In this case, the Court finds no reasonable probability that the result of the

proceeding would have been different had evidence that Turner received consideration for

testimony in another, unrelated case been admitted.  In addition to Turner, two other

witnesses testified that Petitioner made incriminating statements about the fire.  Petitioner

also gave three separate, inconsistent statements to police.  The inconsistencies included

where he was on the night of the fire, who he was with, and whether he spoke to anyone

about the fire.  Defense counsel had sufficient opportunity to cross-examine Turner and

attack his credibility.  There is no indication in the record that the prosecution

intentionally withheld information.  Given such circumstances, the Michigan Court of

Appeals' decision was not contrary to or an unreasonable application of Supreme Court

precedent.

**D.     Admission of Opinion Testimony**

Next, Petitioner argues that the trial court improperly allowed two police officers to testify that they thought Petitioner was not truthful in the statements he made to them. Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claim.

"'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir.2007) (*quoting Estelle v. McGuire*, 502 U.S. 62, 68 (1991)). The standard of review is therefore "very deferential" on claims regarding the admission of evidence in state court. *Hudson v. Lafler*, 421 F. App'x 619, 627 (6th Cir. 2011). An evidentiary ruling may violate due process only where it "is so egregious that it results in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Whether an error in the admission of evidence "constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical[,] highly significant factor." *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000).

21

The Michigan Court of Appeals determined that the two officers' testimony was properly admitted under Michigan Rules of Evidence 401, 403, and 701.  Petitioner fails to show that the alleged evidentiary error rose to the level of a federal constitutional claim warranting relief.  Therefore, the state court's admission of this testimony was reasonable and did not result in a denial of fundamental fairness.

### E.       Subject-Matter Jurisdiction

In his sixth habeas claim, Petitioner argues that the state circuit court lacked subject-matter jurisdiction over his case based upon alleged procedural defects in the felony information and bind-over.

Habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," and does not encompass reexamining state-court determinations of state-law issues.  *Estelle v. McGuire,* 502 U.S. 62, 68 (1991).  The petitioner's claim that the Michigan courts lacked jurisdiction over his criminal case raises an issue of state law and therefore is not cognizable in federal habeas review. *See Samel v. Jabe*, No. 90-1216, 1990 WL 179686, *1 (6th Cir. Nov. 19, 1990); *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).  A habeas petitioner is not entitled to habeas relief based upon an alleged violation of the Michigan Constitution.  *See Hudson v. Berghuis*, 174 F. App'x 948, 952, n.1 (6th Cir. 2006).  In addition, federal due process does not require state officials to follow their own procedural statutes and rules. *Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 1994).  Consequently, this claim is not cognizable for purposes of habeas corpus review.

### F.       Fourth Amendment Claim

In his seventh claim for habeas relief, Petitioner argues that the district court failed to make a proper factual determination of probable cause prior to issuing a warrant for Petitioner's arrest.

23

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90 (Mich. 1965) (describing the availability of a pre-trial motion to suppress). Because Michigan provides a procedural mechanism for raising a Fourth Amendment claim, Petitioner may only demonstrate entitlement to relief if he establishes that presentation of his claim was frustrated by a failure of that mechanism. This he has not done.

Petitioner raised this issue on direct appeal. The Michigan Court of Appeals addressed the issue and found no Fourth Amendment violation. The Michigan Supreme

24

Court denied leave to appeal.  Petitioner was provided an opportunity for full and fair litigation of his Fourth Amendment claim in the Michigan courts.  His disagreement with the state courts' conclusions on his Fourth Amendment claim does not render the state's procedural mechanism inadequate.  This claim is barred by the rule in *Stone v. Powell*.

### G.    Sixth Amendment Right to Counsel

Next, Petitioner argues that his Sixth Amendment right to counsel was violated when informants were placed in his jail cell to elicit incriminating statements from him.  The Michigan Court of Appeals held Petitioner's Sixth Amendment right to counsel was not violated when the government placed informants in his jail cell.  The state court reasoned that Petitioner's Sixth Amendment right to counsel had not yet attached because adversary proceedings had not been initiated against Petitioner for the arson and murder offenses.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  The Sixth Amendment right to counsel "'is offense specific.'"  *Texas v. Cobb*, 532 U.S. 162, 167 (2001), *quoting McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). It "'does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  *Id.* at 167–68 *quoting McNeil*, 501 U.S. at 175.  In 2000 and 2003, when Petitioner made incriminating statements to the jailhouse informants, adversarial proceedings had not yet been initiated against Petitioner

25

and would not be initiated until 2006.  Therefore, the state court's conclusion that Petitioner's rights under the Sixth Amendment had not yet attached when he made the statements to the informants was not contrary to or an unreasonable application of Supreme Court precedent.

### H.    Prosecutorial Misconduct

Finally, Petitioner argues that the prosecutor committed misconduct when he argued that the arson investigation laboratory report constituted conclusive proof of arson.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, __ U.S.__, 132 S. Ct. 2148, 2153, (June 11, 2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This Court must ask whether the Michigan Court of Appeals' (which, despite finding the claims not properly preserved, nevertheless, denied them on the merits) decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, __ U.S. at __, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at __, 131 S. Ct. at 786-87.

The Michigan Court of Appeals found no misconduct:

> Contrary to defendant's argument, the record demonstrates that the prosecution did not represent the forensics report as "positive proof of arson," but instead argued that only the person who set the fire could know that the accelerant used to start the fire was charcoal lighter fluid at the time defendant provided the jailhouse informants with this information.  That a mid-range petroleum product such as charcoal lighter fluid was used to start the fire was, in turn, confirmed by the laboratory report.  Because the record demonstrates that the prosecutor argued reasonable inferences from the evidence when he relied upon the information in the laboratory report, defendant's prosecutorial misconduct claim fails. . . .

*Deering*, 2008 WL 5197091 at *12.

"[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).  The prosecutor's argument did just that.  It was not improper for the prosecutor to characterize the arson laboratory report in the manner he did.  Thus, this Court finds that the state court's decision that no prosecutorial misconduct occurred was not "so far out of line with the very general standard" established in *Darden* as to entitle Petitioner to habeas relief.  *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011) (en banc).

## V.    Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

27

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI.    Conclusion

Accordingly, **IT IS ORDERED** that petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

Petitioner's Motion for Appointment of Counsel (dkt. # 20) is **DENIED AS MOOT**.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  April 12, 2013


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 12, 2013, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135